FILED
2017 Nov-09 AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LEONA WELLS,** *individually and as next friend of C.M.H, a minor,* | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) **Case No.: 4:17-CV-0068-VEH** ) ) |
| **NATHAN AYERS, JEFF JOHNSON, ETOWAH MIDDLE SCHOOL, ATTALLA BOARD OF EDUCATION, DAVID BOWMAN, WYMAN CASH, GARY HUFF, PRESTON NIX, DEBORAH DIXON, and DUANE SMITH,** | ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Plaintiff, Leona Wells, on her own behalf, and "as Mother and Next Friend of C.M.H., a Minor." (Doc. 1 at 1). The Complaint names the following Defendants: Nathan Ayers, the Assistant Principal of Etowah Middle School; Jeff Johnson, the Principal of Etowah Middle School; the Etowah Middle School; the Attalla Board of Education (the "Board"); and David Bowman, the Superintendent of Attalla City Schools. The Complaint also names as Defendants the following members of Attalla City Schools Board of Education: Wyman Cash, Gary Huff, Preston Nix, Deborah Dixon, and Duane Smith. The Complaint alleges that all

of the Defendants are liable under 42 U.S.C. § 1983 for "Violation of Substantive Due Process Rights." (Count One). Against Ayers alone, the Complaint sets out claims under Alabama law for battery, negligence, and wantonness. (Counts Two, Four, and Five respectively). Against Johnson, Bowman, the Etowah Middle School, and the Board, the Complaint sets out the Alabama state law claim for negligent supervision and training. (Count Three).[1] Finally, the Complaint alleges that all of the Defendants engaged in a conspiracy to commit battery. (Count Six). All Counts arise out of a paddling which Ayers administered to C.M.H.

The case comes before the Court on the Defendants' Motion for Judgment on the Pleadings (the "Motion"). (Doc. 20). For the reasons stated herein, the Motion will be **GRANTED in part** and **DENIED in part**.

I. **THE PLAINTIFF CONSENTS TO THE DISMISSAL OF ALL DEFENDANTS EXCEPT AYERS AND JOHNSON, AND TO THE DISMISSAL OF COUNT THREE IN ITS ENTIRETY**

Based on the representations by the Plaintiff (doc. 21 at 1-2), all Defendants except Ayers and Johnson will be dismissed. All dismissals, except for Etowah Middle School, will be <u>without</u> prejudice. Etowah Middle School will be dismissed <u>with</u> prejudice. Furthermore, the Plaintiff agrees that Count Three, the negligent supervision

---

[1] This Count is also brought against an entity named "Attalla Schools," which is not a Defendant in this case.

claim, is due to be dismissed as well. (Doc. 21 at 9). That claim will be dismissed <u>with</u> prejudice as to all Defendants except the Board. (*See* doc. 21 at 9, n. 10). Count Three will be dismissed <u>without</u> prejudice as to the Board.

## II.   STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Eleventh Circuit has stated:

> "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." [*Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)] (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). We accept as true the material facts alleged in the non-moving party's pleading and construe them in the light most favorable to that party. *Id.* Judgment on the pleadings should be denied "[i]f a comparison of the averments in the competing pleadings reveals a material dispute of fact." *Id.*

*Prudential Ins. Co. of Am. v. Kopp*, 658 F. App'x 564, 567 (11th Cir. 2016).

## III.   MATERIAL FACTS ALLEGED IN THE PLEADINGS

The Complaint alleges:

16.   The Attalla Schools permits teachers to inflict corporal punishment on their students.

17.   The Attalla Schools ask for parents to sign documents permitting the school to inflict corporal punishment.

18.   One form of corporal punishment meted out at Attalla Schools is

paddling.

19. Before paddling a student, the student must have previously received at least four written conduct notices home for their parent to sign.

20. Wells moved to Attalla before the 2016–17 school year.

21. She enrolled two children, including C.M.H., as students at Etowah Middle.

22. C.M.H. is an athletic child and an excellent student.

23. Wells signed documents which authorized Etowah Middle to paddle C.M.H. provided that C.M.H. deserved paddling under the school policies and the school provided Wells with notice beforehand.

24. On Friday September 9, 2016, C.M.H. licked his fingers in class.

25. The teacher misinterpreted C.M.H.'s actions as an obscene gesture.

26. C.M.H.—12 years old and unaware of any obscene significance of his movements—denied doing anything wrong.

27. The teacher referred C.M.H. to Assistant Principal Ayers's office for discipline.

28. Ayers decided to paddle C.M.H. despite the fact that it was C.M.H.'s first time to be in trouble at Etowah Middle and the offense involved was, at best, minor, at worst, a mere miscommunication.

29. Assistant Principal Ayers did not speak to either Wells or Wells's husband before paddling C.M.H.

30. The paddling was witnessed by Principal Johnson.

31. Ayers hit C.M.H.

32. C.M.H. cried in pain.

33. Ayers waited sixty seconds and then hit C.M.H. again.

34. C.M.H. told his mother what happened when he got home.

35. Wells didn't understand why C.M.H. was punished for such a seemingly trivial misunderstanding.

36. For the rest of the evening, C.M.H. was in obvious pain but refused to be examined.

37. The next day, while hanging pictures, C.M.H.'s shirt raised, revealing dark bruises caused by Ayers's paddle.

38. Wells was alarmed and took C.M.H. to Riverview Regional Medical Center for treatment.

39. Early the next week, Wells met with Ayers and school nurse Krystal Moon.

40. Ayers did not apologize for beating C.M.H. and refused to look at the pictures of C.M.H.'s bruising, stating that he was only doing his job.

41. As part of an ongoing criminal investigation into the incident, C.M.H. was examined by his pediatrician and specialists in Birmingham.

42. These doctors confirmed that C.M.H.'s injuries were the result of Ayers's abuse.

43. C.M.H. was afraid to go to school after the incident.

44. C.M.H.'s grades slipped from A's and B's to D's and F's.

45. C.M.H. suffered emotional trauma and often cries for no apparent reason.

46. C.M.H. was subsequently diagnosed with PTSD, anxiety, and depression as a result of child abuse. He is being treated with medication.

47. Ayers was arrested for child abuse on December 16, 2016.

48. The Attalla City Schools Board of Education sided with Ayers and did not discipline him for his actions.

49. Etowah Middle and Attalla Schools continue to allow Ayers to work in the school and paddle students.

(Doc. 1 at 4-6, ¶¶16-49).

The Answer alleges, in pertinent part:

4. The Defendants state that the discipline administered to C.M.H. that is the basis of this lawsuit was done fully in compliance with the Board's policy, which provides as follows:

CHAPTER 5.00 - STUDENTS

CORPORAL PUNISHMENT       5.30.1

> In order to establish and maintain an educational climate conducive to learning, the Board permits reasonable corporal punishment of students in the schools of the School System.
>
> Teachers shall be supported by the Board and administration in their efforts to teach good citizenship by requiring proper conduct. While teachers shall be reasonable in student-related demands, they need not tolerate disrespectful, boisterous, rough, and violent outbursts of language and temper on the part of students.
>
> In all cases, corporal punishment shall be administered in

accordance with the following guidelines:

- A. In cases where a student maintains innocence of the offense, a brief but adequate statement of the reasons and supporting evidence shall be given orally to the student with an opportunity for the student to explain his/her sides of the situation. Based upon all facts, if the situation warrants it, corporal punishment may then be administered without delay (see Due Process policy JCAA).

- B. The use of corporal punishment should follow specific failures of other corrective measures to improve student behavior. Teachers should be prepared to provide information concerning alternate corrective measures used.

- C. A teacher, principal, or assistant principal may punish corporally; but, only in the presence of a principal or assistant principal (preferably the same sex as the offender), who should be informed beforehand of the reasons for the punishment. Principals or assistant principals may administer corporal punishment in the presence of either or a member of the certified staff.

- D. The instrument used to corporally punish should be wisely selected and approved by the principal.

- E. Corporal punishment should not include more than three (3) licks administered to the buttocks. Other forms of corporal punishment are not permitted in the schools of the School System.

> F. Utmost care, tact, and judgment shall be exercised; and all cases of corporal punishment shall be documented by both the person administering the punishment and the witness and delivered to the principal. Such documentation shall be submitted by the end of the day the incident occurred.
>
> G. School principals, assistant principals, or teachers who have administered corporal punishment shall provide the student's parents or guardians, upon request, a written explanation of the reason(s) and the name of the witness.
>
> H. Corporal punishment shall not be administered in the visual presence of other students.
>
> I. Those administering corporal punishment shall consider the age, size, sex, and overall physical condition of the student.
>
> J. Corporal punishment shall not be administered in anger or with malice.

(Doc. 17 at 5-7) (quoting doc. 17-1 at 1-2).

## IV. ANALYSIS

### A. The Section 1983 Claim (Count One)

The Defendants argue that "excessive corporal punishment does not rise to the level of a constitutional violation." (Doc. 20 at 2-5, §I.). The Defendants provide their

only argument in the Motion itself. (Doc. 20). They have filed no reply brief.[2]

Count One is asserted against both Ayers and Johnson and states as follows:

51. Federal law grants relief to citizens who have been deprived of their rights, privileges, or immunities by state actors. 42 U.S.C. § 1983.

52. C.M.H. has the statutory and common law right to free from physical abuse and excessive corporal punishment at school.

53. C.M.H. was deprived of his rights by Defendants who were acting under the color of law.

54. Ayers and Johnson administered the abusive punishment.

55. The punishment administered violated school policies concerning the due process C.M.H. was due before the punishment was administered.

56. The punishment was immoderate in light of C.M.H.'s actions.

(Doc. 1 at 7, ¶¶51-56). This Count, although it is entitled ""Violation of Substantive Due Process Rights under 42 U.S.C. § 1983" (doc. 1 at 7) could arguably be read to set out a claim for a violation of both the Plaintiff's substantive <u>and</u> procedural due process rights.

First, to the extent that any procedural due process claim is made, it is due to be dismissed. *See Ingraham v. Wright*, 430 U.S. 651, 683, 97 S. Ct. 1401, 1419, 51 L. Ed. 2d 711 (1977); *Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069, 1074

---

[2] According to the Court's Uniform Initial Order, entered in this case on January 17, 2017, "[t]he movant's reply brief shall be filed no later than seven (7) calendar days after the date on which the opponent's responsive brief was due." (Doc. 3 at 22).

(11th Cir. 2000) (noting that *Ingraham* held that state law remedies were adequate to protect against deprivations without procedural due process); *Nowell v. Dale Cty. Bd. of Educ.*, 17 F. Supp. 3d 1134, 1140 (M.D. Ala. 2014) (Watkins, J.) (dismissing procedural due process claim because "'the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools [because corporal punishment] is authorized and limited by the common law[.]'") (quoting *Ingraham*, 430 U.S. at 682); *Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1132 (N.D. Ga. 2016) (Totenberg, J.) ("Plaintiffs are not, however, permitted to proceed on their second theory for their procedural due process claims, that Defendants violated Alex's procedural due process rights by failing to follow proper procedures before administering corporal punishment. Supreme Court precedent is clear that 'the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment,' no matter how severe.") (citing *Ingraham,* 430 U.S. at 682).

As to the substantive due process claim in Count One, the Eleventh Circuit has stated:

> The Due Process Clause protects individuals against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (quoting *Collins v. City of Harker Heights*, 503

U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992)). To be arbitrary in the constitutional sense, an executive abuse of power must "shock[ ] the conscience." *Id*. at 846, 118 S.Ct. at 1717. "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id*. at 848, 118 S.Ct. at 1717. The Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." *Id*. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id*. at 849, 118 S.Ct. at 1718. Both this Court and the Supreme Court have "said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." *Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir.2000); *see also Lewis*, 523 U.S. at 848, 118 S.Ct. at 1718. Nevertheless, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment ... may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal*, 229 F.3d at 1075.

\* \* \*

[A] claim of excessive corporal punishment has "an objective and a subjective component, both of which must be met before a school official may be subject to liability." *Neal*, 229 F.3d at 1075 n. 3. The evidence must support a reasonable inference that the punishment is "obviously excessive" as an objective matter and that [the official] "subjectively intend[ed] to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." *Id*. To determine whether a use of force is "obviously excessive, we consider the totality of the circumstances." *Id*. at 1075. Three factors are particularly relevant: "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id*. . . . Neal [also] instructs us to consider the totality of the circumstances .

11

. ..

\* \* \*

> "[I]f the use of force was objectively reasonable—that is, if it 'was not excessive as a matter of law and was a reasonable response to the student's misconduct'—then the subjective intent of the school official is unimportant." *Id.* (quoting *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 563 n. 4 (8th Cir.1988)). Consequently, evidence as to [the official's] subjective intent does not affect our determination of whether, viewed objectively, the circumstances provided [the official] with a reason to use force.

*T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 599-600 (11th Cir. 2010).[3] Accordingly, under binding authority, the Motion is due to be denied as to

---

[3] The Defendants do not cite to *T.W.* or *Neal* in support of their arguments. They merely write:

"Corporal punishment itself is not arbitrary, capricious, or unrelated to legitimate educational goals; therefore, it is not violative of substantive due process on its face." *Gaither v. Barron*, 924 F. Supp. 134, 136 (M.D. Ala. 1996) (citing Hale v. Pringle, 562 F. Supp. 598, 600 (M.D. Ala. 1983), further citing *Ingraham v. Wright*, 525 F.2d 909 (5 Cir. 1976) (en banc)). The Court noted in *Gaither v. Barron*:

> The Court of Appeals, however, has clearly stated that it is not the federal court's duty to scrutinize when punishment in the classroom is appropriate, nor to scrutinize the amount of punishment that is due. *Ingraham*, 525 F.2d at 917. "It would be a 'misuse of [federal] judicial power [to look at each individual instance of punishment] to determine whether a teacher had acted arbitrarily or excessively in applying corporal punishment.'" *Pringle*, 562 F. Supp. at 600 (quoting Ingraham, 525 F.2d at 917). This does not mean that teachers who inflict excessive corporal punishment go unchecked. Rather, where state criminal and civil actions are available to students exposed to such punishment, those state law remedies are the appropriate check. . . . Because of the availability in Alabama of state criminal and civil actions against a teacher who excessively

the substantive due process claim in Count One. The Court holds that the Plaintiff has plausibly pled a claim for violation of her minor son's substantive due process rights. To the extent that it attempts to set out a substantive due process claim for excessive corporal punishment, Count One will survive.[4]

## B. The Remaining State Law Claims

As noted above, against Ayers alone, the Complaint sets out claims under Alabama law for battery, negligence, and wantonness. (Counts Two, Four, and Five respectively). The Complaint also alleges that Johnson and Ayers engaged in a

---

        punishes a child, it would be a misuse of this court's judicial power to consider whether this particular instance of corporal punishment was arbitrary or excessive. 924 F. Supp. at 136. (Emphasis added. Bracketed alterations added in *Gaither v. Barron*.)

        The Plaintiffs in this case pursued criminal charges against Defendant Nathan Ayers in the Etowah County Circuit Court. The state law civil claims alleged in this action are available to the Plaintiffs in that court as well. As the Middle District noted, it would be a misuse of federal judicial power to litigate whether the discipline C.M.H. allegedly received was excessive. All claims should therefore be dismissed and the Plaintiffs should be required to pursue relief in State court.

(Doc. 20 at 2-3). As noted above, and by the Plaintiff in her brief, "Defendants' position misstates current Eleventh Circuit law." (Doc. 21 at 10).

[4] The Defendants do not argue that the Section 1983 claim cannot apply to Ayers's supervisor, Johnson. Accordingly, the Court will not address the Plaintiff's argument on that issue. (Doc. 21 at 13-14). The Plaintiff also argues that state agent immunity does not protect the individual defendants for actions taken in their personal capacity. (Doc. 21 at 13-15). The Motion asserts state agent immunity as to the individual defendants only in their <u>official</u> capacities. (Doc. 20 at 5-6). Accordingly, the Court need not address the Plaintiff's argument on that point.

conspiracy to commit battery. (Count Six).[5] The Defendants' only argument for the dismissal of these claims is that, if the Court dismissed the Section 1983 claims, it should, pursuant to 28 U.S.C. § 1367, decline to exercise supplemental jurisdiction over the remaining state law claims. Since the Court is not dismissing the Section 1983 claim, this argument is without merit.

## V. CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1. The Motion for Judgment on the Pleadings (doc. 20), is hereby **GRANTED** as follows:

   A. Count One is **DISMISSED with prejudice** to the extent that it attempts to set out a claim for violation of the Plaintiff's procedural due process rights.

   B. Etowah Middle School is **DISMISSED with prejudice**.

   C. All other Defendants, except Ayers and Johnson, are **DISMISSED without prejudice**.

   D. Count Three is **DISMISSED without prejudice** as to the Board.

---

[5] Although the Complaint also sets out the Alabama state law claim for negligent supervision and training against Johnson (Count Three), the Plaintiff has agreed to dismiss that claim. (*See supra* § I).

Count Three is **DISMISSED with prejudice** as to all other Defendants.

2. The Motion for Judgment on the Pleadings is **DENIED** in all other respects.

**DONE** and **ORDERED** this 9th day of November, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge